USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 6/18/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE EASTBORO FOUNDATION CHARITABLE TRUST and JAMES BERNATH,

Plaintiffs,

-against-

ABRAHAM M. PENZER and JOSHUA ROTHENBERG,

Defendants.

---

13 Civ. 1343 (AJP)

**OPINION AND ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

Plaintiffs Eastboro Foundation and James Bernath (collectively, "Bernath") bring this diversity action against defendants Abraham Penzer and Joshua Rothenberg, seeking $150,000 in damages resulting from an unsuccessful real estate transaction among the parties. (Dkt. No. 1: Compl.) Presently before the Court is Penzer's motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). (Dkt. No. 8: Notice of Motion.) The parties have consented to decision of this motion by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 23.) For the reasons set forth below, Penzer's motion is GRANTED and the case is dismissed without prejudice.[1]

---

[1] Rothenberg's subsequently-filed motion to dismiss for lack of personal jurisdiction (Dkt. No. 25) is mooted by this Opinion, since Bernath has stated that if Penzer's motion to dismiss is granted, Bernath will sue both defendants in New Jersey. (See Bernath Counsel Eisenberger's June 17, 2013 Letter to the Court.)

## FACTS[2]

Plaintiff Bernath asserts four causes of action: legal malpractice (Dkt. No. 1: Compl. ¶¶ 25-28), breach of fiduciary duty (id. ¶¶ 29-32), conversion, embezzlement and aiding and abetting thereof (id. ¶¶ 33-36), and unjust enrichment and aiding and abetting thereof (id. ¶¶ 37-40). All four claims are based on the core allegation that Bernath transferred $150,000 to attorney Penzer's New Jersey trust account for the purchase of New Jersey property, which Penzer then disbursed to Rothenberg who purchased the property himself. (Compl. ¶¶ 1-2, 14-15, 18-22, 28, 31, 34-35, 38-39.)

### Parties

Plaintiff Bernath is a New York resident and partner at the CPA firm of Bernath & Rosenberg, P.C. in New York City. (Dkt. No. 1: Compl. ¶ 7; Dkt. No. 13: Bernath Aff. ¶ 3.) Plaintiff The Eastboro Foundation is a New York Charitable Trust with an office in New York City. (Compl. ¶ 6.) Defendant Penzer is a New Jersey resident and attorney whose law office is located in Lakewood, New Jersey. (Compl. ¶¶ 8, 12.) Defendant Rothenberg is a New Jersey resident and real estate developer whose office is also located in Lakewood, New Jersey. (Compl. ¶¶ 9, 13.)

### Prior Transactions

In January and March 2010, Bernath formed RBRB Realty, LLC and RBRB Realty II, LLC,[3] both New Jersey limited liability companies with New Jersey addresses. (Dkt. No. 13: Bernath Aff. ¶ 6 & Ex. A: RBRB Formation Docs.) On February 16 and March 17, 2010, RBRB purchased two parcels of land being developed by Rothenberg in Lakewood, New Jersey. (Bernath

---

[2] The facts are undisputed unless otherwise indicated.

[3] These entities are collectively and interchangeably referred to as "RBRB."

Aff. ¶¶ 7-9.) For both purchases, Bernath sent wire transfers to Penzer's attorney trust account in New Jersey. (Dkt. No. 1: Compl. ¶ 16; Bernath Aff. ¶ 7; Dkt. No. 9: Penzer Aff. ¶¶ 7-8 & Exs. B-C: 2/16/10 & 3/12/10 Wire Receipts.) Penzer prepared both sets of closing documents on behalf of RBRB and was paid $1,000 for each one. (Bernath Aff. ¶¶ 7-9, 21; Bernath Aff. Exs. B-C: 2/16/10 & 3/17/10 Closing Docs.)[4/]

**The Subject Transaction**

In or around September 2010, Bernath intended to purchase a third parcel of land being developed by Rothenberg in Lakewood, New Jersey. (Dkt. No. 1: Compl. ¶¶ 1-2, 14-15, 22-23.) Bernath alleges that he "spoke with Penzer directly on the phone immediately prior to [his] making the very wire transfers which are the subject of this action" and "specifically recall[s] asking [Penzer] whether the wire transfers should be made into the same attorney escrow bank account as the previous two similar transactions . . . for the investment with Rothenberg in the Lakewood development." (Dkt. No. 13: Bernath Aff. ¶ 4.)[5/] On September 8, 2010, Bernath made two wire

---

4/ Bernath's opposition brief points out that a fax line appearing on the top of one of the closing documents indicates it was faxed from Penzer, but there is no allegation that the fax was sent to New York as opposed to RBRB's New Jersey locations. (Dkt. No. 14: Bernath Opp. Br. at 14-15; Bernath Aff. Ex. C: 3/17/10 Closing Docs.; see generally Bernath Aff.)

5/ There is no allegation that Penzer placed the call to Bernath, and in fact Bernath's characterization of the phone call as one in which he was asking Penzer for information suggests that it was Bernath who called Penzer. (Dkt. No. 14: Bernath Opp. Br. at 9; see also Dkt. No. 22: Penzer Reply Aff. ¶ 3: "I categorically deny that I ever spoke with Bernath immediately before or directly after the September 8, 2010 transfer of funds into my attorney trust account. At no time prior to or after the September 8, 2010 transactions did Bernath telephone me (as he contends in opposition) to ask whether the wire transfers at issue should be made into the same attorney escrow account as the previous February 2010 and March 2010 transactions.") In any event, even assuming arguendo that Penzer placed the call, a single phone call is jurisdictionally insignificant under C.P.L.R. §§ 301 and 302(a). See, e.g., Fox v. Boucher, 794 F.2d 34, 37 (2d Cir. 1986); Hearst Corp. v. Goldberger, 96 Civ. 3620, 1997 WL 97097 at *12 & n.14 (S.D.N.Y. Feb. 26, 1997) (Peck, M.J.) (collecting
(continued...)

transfers totaling $150,000 to Penzer's attorney trust account in New Jersey. (Compl. ¶ 14; Dkt. No. 9: Penzer Aff. Ex. D: 9/8/10 Wire Receipts.) When the third Lakewood transaction did not "come to fruition," Penzer disbursed Bernath's $150,000 to Rothenberg for the purchase of the New Jersey property on Rothenberg's behalf. (Compl. ¶¶ 18-24; Bernath Aff. ¶¶ 25-27.)

**The New York Meeting**

At some point after the $150,000 wire transfers were made, Penzer came to Bernath's office in New York City for a meeting "involving a business that [Penzer's] client was working on acquiring" in Bay Shore, New York—a potential transaction that admittedly is unrelated to the transaction presently at issue. (Dkt. No. 13: Bernath Aff. ¶¶ 13, 16-17; Dkt. No. 22: Penzer Reply Aff. ¶ 5.) Bernath alleges that he and Penzer also "discussed" the subject transaction at the meeting, but provides no information regarding the content, nature, duration, or any details of the alleged discussion. (Bernath Aff. ¶¶ 3, 13, 16-17.) According to Penzer, while he did see Bernath when he came to Bernath's office to meet with others, "the only communication that [Penzer] had with Bernath was merely to say 'hello' to him in passing." (Penzer Reply Aff. ¶¶ 3, 5-6.)

---

5/ (...continued)
cases); Reiss v. Steigrod, 866 F. Supp. 747, 750 (S.D.N.Y. 1994) (Sotomayor, D.J.) ("[A]n isolated phone call to a New York company does not constitute transacting business in the state."); Twine v. Levy, 746 F. Supp. 1202, 1205 (E.D.N.Y. 1990) (McLaughlin, D.J.) ("Several phone calls by defendant [attorney] from Washington to New York . . . do not establish a course of doing business in New York on the part of defendants that would even approach the threshold of doing business for purposes of CPLR 301."); First City Nat'l Bank & Trust Co. v. Zuckerman, 682 F. Supp. 182, 183 (S.D.N.Y. 1987) ("[T]he only other communication originated from plaintiff, seeking to verify the transaction. . . . In sum, plaintiff has not shown that defendant voluntarily elected to invoke the benefits and protections of the laws of New York.").

**Penzer's Legal Practice**

Penzer is admitted to practice in New Jersey, New York and the District of Columbia. (Dkt. No. 1: Compl. ¶ 12; Dkt. No. 9: Penzer Aff. ¶ 3.) Penzer has been admitted to practice in New York since 1982, his bar membership is active and his next biennial registration is due in April 2014. (Penzer Aff. ¶ 3; Dkt. No. 13: Bernath Aff. ¶¶ 14-17 & Ex. D: N.Y.S. Unified Court Sys. Docs.) Penzer has appeared four times in New York courts, most recently in 1994. (Bernath Aff. ¶ 16 & Ex. D: N.Y.S. Unified Court Sys. Docs.) Penzer asserts that he has "not been before the New York Courts or actively engaged in the practice of law in the State of New York for nearly twenty (20) years (since 1994)." (Dkt. No. 22: Penzer Reply Aff. ¶ 8.)

Penzer's firm is incorporated only in New Jersey, his only place of business is the firm's office in Lakewood, New Jersey, and Penzer asserts that his practice is limited to New Jersey. (Compl. ¶¶ 8, 12; Penzer Aff. ¶¶ 3-5.) Bernath does not dispute that Penzer does not have employees, an office, address, bank account or telephone number in New York. (Penzer Aff. ¶¶ 4-5.) Penzer claims that he has no New York clients, and neither solicits business, markets, nor advertises in New York. (Penzer Aff. ¶¶ 4-5.) In opposition, Bernath alleges that Penzer is "practicing law in New York" by "working on New York transactions and representing New York clients." (Bernath Aff. ¶ 17.)

## ANALYSIS

### I. THE STANDARDS GOVERNING A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re

Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003); accord, e.g., MacDermid, Inc. v. Canciani, No. 12-1747-cv, 2013 WL 1943258 at *1 (2d Cir. May 13, 2013).[6]

"Where, as here, a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d at 84; accord, e.g., MacDermid, Inc. v. Canciani, 2013 WL 1943258 at *1.[7] "'[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]'" Whitaker v. Am. Telecasting, Inc., 261 F.3d at 208 (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)).[8]

"In assessing whether personal jurisdiction is authorized, 'the court must look first to the [jurisdictional] statute of the forum state, in this instance New York.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d at 208 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir.

---

6/ See, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005), cert. denied, 549 U.S. 951, 127 S. Ct. 379 (2006); DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.), cert. denied, 519 U.S. 1006, 1007, 117 S. Ct. 508, 508 (1996).

7/ See also, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d at 165; Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 784; Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); Ball v. Matallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196-97 (2d Cir.), cert. denied, 498 U.S. 854, 111 S. Ct. 150 (1990).

8/ See, e.g., MacDermid, Inc. v. Canciani, 2013 WL 1943258 at *1; DiStefano v. Carozzi N. Am., Inc., 286 F.3d at 84; PDK Labs, Inc. v. Friedlander, 103 F.3d at 1108; CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).

1997)).[9/] "'If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d at 208.[10/]

### A. General Jurisdiction Under C.P.L.R. § 301

C.P.L.R. § 301 provides, cryptically, that a "court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Section 301 traditionally applies to persons actually present in New York and to corporations "'doing business'" in New York, "'not occasionally or casually, but with a fair degree of permanence and continuity.'" Hearst Corp. v. Goldberger, 96 Civ. 3620, 1997 WL 97097 at *8 (S.D.N.Y. Feb. 26, 1997) (Peck, M.J.) (quoting Joseph McLaughlin, Practice Commentary to CPLR § C301:1, § C:301:2 at pp. 7-9 (McKinney's 1990)); accord, e.g., United Mobile Techs., LLC v. Pegaso PCS, S.A. de C.V., No. 11-2813-CV, 2013 WL 335965 at *1 (2d Cir. Jan. 30, 2013) ("Under N.Y. C.P.L.R. § 301, general jurisdiction is established if the defendant is shown to have 'engaged in continuous, permanent, and substantial activity in New York.'").[11/]

---

9/ See also, e.g., MacDermid, Inc. v. Canciani, 2013 WL 1943258 at *1; Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d at 165; DiStefano v. Carozzi N. Am., Inc., 286 F.3d at 84; Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 784; Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 567.

10/ See also, e.g., MacDermid, Inc. v. Canciani, 2013 WL 1943258 at *1; Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d at 165; Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 784; Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 567.

11/ See also, e.g., Saudi v. Marine Atl., Ltd., 306 F. App'x 653, 654-55 (2d Cir. 2009); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (citing N.Y. cases); Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983).

**B. Specific Jurisdiction Under C.P.L.R. § 302(a)**

New York "long-arm" jurisdiction is codified in C.P.L.R. § 302(a),[12] which provides:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state . . . ; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state . . . if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

C.P.L.R. § 302(a).

**II. PENZER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION IS GRANTED AND THE CASE DISMISSED**

It is undisputed that Penzer has no address, phone number or employees in New York, and that his law firm is incorporated only in New Jersey with its only office located in New Jersey. (See page 5 above). There are no allegations that Penzer solicits business or advertises his services in New York. (See page 5 above.) Bernath's claims arise from the transfer of funds to

---

[12] See, e.g., PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108-09 (2d Cir. 1997); Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996); Pyramyd Stone Int'l Corp. v. Crosman Corp., 95 Civ. 6665, 1997 WL 66778 at *10 (S.D.N.Y. Feb. 18, 1997); see generally 1 M. Silberberg, Civil Practice in the Southern District of New York §§ 8:15-8:29 (2d ed. 2012).

Penzer's New Jersey attorney trust account for the purchase of New Jersey property, which funds were disbursed in New Jersey to a New Jersey resident, co-defendant Rothenberg. (See pages 3-4 above.)

## A. Bernath Failed to Establish a Basis for C.P.L.R. § 301 General Jurisdiction Over Penzer

Bernath's argument for general jurisdiction is not based on evidence that Penzer has, for example, employees, an office, real estate, a bank account, or a phone listing in New York, or that he solicits or markets his services in New York, as typically would be required.[13] See, e.g., Saudi v. Marine Atl., Ltd., 306 F. App'x 653, 655 (2d Cir. 2009); Weiss v. Barc, Inc., 12 Civ. 7571, 2013 WL 2355509 at *2 (S.D.N.Y. May 29, 2013). Rather, Bernath argues that Penzer's license to practice law in New York is comparable to a foreign company's registration to conduct business in New York, and thus automatically subjects Penzer to general jurisdiction. (Dkt. No. 14: Bernath Opp. Br. at 5-12.)

It is undisputed that an out-of-state company's registration to do business in New York is deemed a consent to general personal jurisdiction in New York. E.g., STX Panocean (UK) Co. v. Glory Wealth Shipping PTE Ltd., 560 F.3d 127, 131 (2d Cir. 2009) ("It is well-settled under

---

[13] To the extent Bernath intended to make such an argument, it is rejected. Because the Court finds that Penzer's New York contacts are insufficient even to meet the standard for "transacting business" (see pages 13-23 below), Bernath's showing necessarily falls short of the "doing business" standard, since C.P.L.R. § 301 requires considerably more than C.P.L.R. § 302(a)(1). E.g., MWL Brasil Rodas & Eixos LTDA v. K-IV Enters. LLC, 661 F. Supp. 2d 419, 425 (S.D.N.Y. 2009) ("Courts require a higher level of contacts in cases of general jurisdiction than in cases of specific jurisdiction . . . ."); Hearst Corp. v. Goldberger, 96 Civ. 3620, 1997 WL 97097 at *8 (S.D.N.Y. Feb. 26, 1997) (Peck, M.J.) (Defendant's "contacts with New York do not even establish 'transacting business' jurisdiction under CPLR § 302. Those contacts therefore do not establish 'doing business' jurisdiction under CPLR § 301 either." (collecting cases)); see also McGowan v. Smith, 52 N.Y.2d 268, 272-73, 437 N.Y.S.2d 643, 645 (1981).

New York law that registration under [N.Y. Bus. Corp. Law] § 1304 subjects foreign companies to personal jurisdiction in New York."). There is no comparable caselaw, however, construing an attorney's license to practice law as an automatic consent to general personal jurisdiction; in fact, courts have rejected that argument on a number of occasions. See, e.g., Mangia Media Inc. v. Univ. Pipeline, Inc., 846 F. Supp. 2d 319, 323 (E.D.N.Y. 2012) ("Plaintiff cites no authority for the broad exercise of general jurisdiction over each and every member of the Bar of this State."); Lans v. Adduci Mastriani & Schaumberg L.L.P., 786 F. Supp. 2d 240, 284 n.29 (D.D.C. 2011) ("[I]t has been widely held that membership in a state Bar does not have any impact on the jurisdictional analysis." (collecting cases)); Worthington v. Small, 46 F. Supp. 2d 1126, 1134 (D. Kan. 1999) ("In short, other than maintaining his Kansas law license, defendant has had very few contacts with Kansas in recent years. These limited contacts are not sufficiently 'continuous and systematic' to enable this court to exercise general jurisdiction over defendant.").[14]

---

[14] See also, e.g., McCabe v. Floyd Rose Guitars, No. 10CV581, 2012 WL 1409627 at *3 (S.D. Cal. Apr. 23, 2012) ("[T]hat [the firm's] attorneys are licensed in California . . . does not convince the Court that [the firm's] contacts are so systematic and continuous that general jurisdiction is appropriate."); Santos v. Sacks, 697 F. Supp. 275, 281-82 (E.D. La. 1988) ("[M]embership in the Florida Bar does not, of itself, establish the minimum contacts required by due process to confer personal jurisdiction over a nonresident defendant. [Plaintiff's cited authority] only recognized that the requisite minimum contacts to sustain 'general jurisdiction' are established where a foreign corporation is qualified under Florida law to transact business in Florida . . . ." (fn. omitted)); Baker v. Eighth Judicial Dist. Court, 116 Nev. 527, 532, 999 P.2d 1020, 1023 (2000) ("At least two jurisdictions have held that membership in the state bar, in and of itself, does not subject an individual to general jurisdiction in the state of membership because such contact is not substantial, continuous, or systematic. We agree with [those] courts that state bar membership does not necessarily implicate substantial, continuous, or systematic contact." (citations omitted)); Katz v. Katz, 310 N.J. Super. 25, 33, 707 A.2d 1353, 1356 (App. Div. 1998) ("[D]efendant's license to practice law in this state does not afford a basis to exercise in personam jurisdiction over him in a matter totally unrelated to his professional license. Our research has not disclosed a reported New Jersey case which has considered the issue, but there are authorities from other jurisdictions which have reached such a conclusion. We agree with the views expressed in

(continued...)

Nor do Penzer's "affirmative steps of renewing the [N.Y. attorney] registrations, paying the fees and completing the 24 accredited New York CLE credit hours every two years" (Bernath Opp. Br. at 10) command a different result. See Baker v. Eighth Judicial Dist. Court, 116 Nev. at 532-33, 999 P.2d at 1023-24 ("Although . . . nonresident bar members are regulated by our supreme court rules ('SCR'), we conclude that a nonresident bar member could comply with these rules without having continuous and systematic contact with the State of Nevada. In fact, a nonresident, nonpracticing bar member's compliance with the SCR could consist solely of sending a yearly check and an address update form upon relocation. Accordingly, we conclude that the district courts of Nevada lack general jurisdiction over [plaintiff] on the basis of his bar membership." (fn. omitted)); Advance Petroleum Serv., Inc. v. Cucullu, 614 So. 2d 878, 880 (La. App. Div.) (no jurisdiction where defendant "graduated from a Louisiana Law School and is licensed to practice in Louisiana and has attended the requisite CLE courses to maintain his license"), writ denied, 617 So. 2d 911 (La. 1993).

Bernath relies heavily on Penzer's statutory appointment of a New York agent for service of process as required by the regulations governing non-resident members of the New York Bar:

---

14/ (...continued)
Lebkuecher v. Loquasto, [255 Pa. Super. 608, 611, 389 A.2d 143, 145 (1978)], in which the court said '[t]he mere possession of a license accomplishes nothing in the way of pecuniary gain; it only broadens opportunities for such gain. It is the actual practice of a profession in Pennsylvania and not the possession of the right to practice that brings a person within the jurisdiction of a . . . [c]ourt . . . .'" (collecting cases, emphasis added, citations omitted)); Crea v. Busby, 48 Cal. App. 4th 509, 515, 55 Cal. Rptr. 2d 513, 516 (1996) ("[R]espondent's contacts with California are insufficient to justify the exercise of general jurisdiction over him. The only contact respondent has had with California is the maintenance of his California law license.").

> Penzer consented to the exercise of personal jurisdiction when he registered to practice law in the State of New York, and accordingly designated the Clerk of the Appellate Division as his agent for service of process pursuant to the Rules of the Court of Appeals for the Admission of Attorneys and Counselors at Law, 22 NYCRR Part 520, Section 520.13. This is a similar concept to the requirement that a foreign corporation registering to do business here appoints the Secretary of State to accept service, and is deemed to have thereby consented to New York jurisdiction under CPLR Section 301 for all purposes, regardless of whether it actually engages in New York activities or whether the claim arises from such activities.

(Bernath Opp. Br. at 6.) This argument fails because the Business Corporation Law requires appointment of an agent for all purposes, whereas the attorney regulation only requires appointment of an agent for specific cases, i.e., actions arising from New York legal services.[15/]

Because appointment of the Appellate Division as Penzer's agent only extends to the specific type of action stated in the regulation, it is not a consent to general jurisdiction. Cf., e.g., Advance Realty Assocs. v. Krupp, 636 F. Supp. 316, 317-18 (S.D.N.Y. 1986) ("Plaintiff argues that the registration . . . pursuant to N.Y. Gen. Bus. L. § 352-b manifests the defendants' consent to general jurisdiction in New York. . . . When a foreign individual or entity registers under § 352-b, it appoints the secretary of state to receive process for it 'in any action, investigation or proceeding brought or conducted by the attorney general under the provisions of' New York's securities laws. Obviously, this is not such an action. Defendants could not . . . consent to anything more than what

---

15/ Compare N.Y. Bus. Corp. Law § 304(a) ("The secretary of state shall be the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served."), and N.Y. Bus. Corp. Law §§ 304(b), 1304(a)(6), with N.Y. Comp. Codes R. & Regs. tit. 22, § 520.13(a) ("Every applicant for admission to practice who does not reside and is not employed full-time in the State shall be required, as a condition of admission, to execute and file with the Appellate Division . . . a duly acknowledged instrument . . . designating the clerk of such Appellate Division as the applicant's agent upon whom process may be served . . . in any action or proceeding thereafter brought against the applicant and arising out of or based upon any legal services rendered or offered to be rendered by the applicant within the State." (emphasis added)).

the statute says. Mere registration pursuant to § 352-b does not create general jurisdiction over the defendants.").[16/]

Accordingly, because Penzer's New York law licence is not deemed a consent to general jurisdiction, and because the present claims do not arise from legal services Penzer rendered in New York, Bernath has not established that personal jurisdiction over Penzer is appropriate under C.P.L.R. § 301.

**B. Bernath Failed to Establish a Basis for C.P.L.R. § 302 Specific Jurisdiction Over Penzer**

**1. C.P.L.R. § 302(a)(1): Transaction of Business in New York**

"Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983) (citations omitted); accord, e.g., Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171 (2d Cir. 2010).

---

[16/] See also, e.g., Arkwright Mut. Ins. Co. v. Scottsdale Ins. Co., 874 F. Supp. 601, 605 (S.D.N.Y. 1995); Weinstein v. Kmart Corp., 99 A.D.3d 997, 997, 952 N.Y.S.2d 459, 459 (2d Dep't 2012) (Insurance company's "statutorily required appointment of the Superintendent of Insurance as its agent for service of process 'in any proceeding against it on a contract delivered or issued for delivery, or on a cause of action arising, in this state,' constituted a consent to jurisdiction for claims within the scope of that appointment." (emphasis added, citation omitted)); Muollo v. Crestwood Vill., Inc., 155 A.D.2d 420, 421-22, 547 N.Y.S.2d 87, 88-89 (2d Dep't 1989) ("We reject the plaintiff's contention that a foreign corporation's designation, under General Business Law § 352-a(1) or § 352-b(1), of the Secretary of State as an agent to receive process, constitutes consent to personal jurisdiction in any action brought in New York State. . . . Unlike Business Corporation Law §§ 304 and 1304, a foreign corporation's appointment of the Secretary of State as an agent to receive process for it under General Business Law § 352-a and § 352-b is limited by the statute to receipt of process in any action, investigation or proceeding brought or conducted by the Attorney-General under the provisions of the Martin Act. Since this is not such an action, the defendant cannot be deemed to have consented to the plaintiff acquiring personal jurisdiction over it in this State.").

"'[I]n order for personal jurisdiction over [Penzer] to lie in New York [under C.P.L.R. § 302(a)(1), Penzer] must have transacted business in this state and the cause of action must arise out of such transaction.'" Rolls-Royce Motors, Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040, 1050 (S.D.N.Y. 1987); accord, e.g., Reiss v. Steigrod, 866 F. Supp. 747, 749 (S.D.N.Y. 1994) (Sotomayor, D.J.). As the Court further explained in Rolls-Royce:

> The test [under C.P.L.R. § 302(a)(1)] is hardly a precise one; the court must look at the aggregation of defendant's activities, coupled with the selective weighing of the various actions. Moreover, it is the "nature and quality, and not the amount of New York contacts [which] must be considered by the court." Primary factors to consider include the physical presence of defendant in New York, the risk of loss as it effects the New York transaction, and the extent to which the contract is performed in New York.

Rolls-Royce Motors, Inc. v. Charles Schmitt & Co., 657 F. Supp. at 1050-51 (citations omitted).

In arguing that Penzer transacted business in New York and that the claims arise out of that transaction, Bernath asserts that Penzer is "practicing law in New York on a regular ongoing basis" (Dkt. No. 14: Bernath Opp. Br. at 11), relying on: (a) Penzer's maintenance of a New York law license "with efforts in New York that include taking New York CLE courses, in order to invoke the benefits and privileges of doing business here," as well as Penzer's four New York court appearances between 1987 and 1994 (Bernath Opp. Br. at 10; Dkt. No. 13: Bernath Aff. Ex. D: N.Y.S. Unified Court Sys. Docs.); (b) Penzer's meeting at Bernath's New York office regarding a potential property transaction in Bay Shore, New York (Bernath Opp. Br. at 10-11); and (c) that "Bernath . . . , and [the RBRB] LLCs that [he] formed, were Penzer's clients on the two prior transactions, and the third identical transaction which is the subject [o]f this lawsuit" (Bernath Opp. Br. at 11; see pages 2-3 above).

**a. New York Bar Membership and Court Appearances**

Bernath's claims are based on an intended real estate transaction in New Jersey, namely, the purchase of New Jersey property from a New Jersey seller. (See page 3 above.) The acts and omissions alleged to constitute Penzer's attorney malpractice and the related claims of unlawfully disbursing Bernath's funds from Penzer's New Jersey attorney trust account to a New Jersey resident, also took place in New Jersey. (See pages 3-4 above.)

Accordingly, even assuming arguendo that Penzer's maintenance of an active New York license constitutes a transaction of business, Bernath's claims relate exclusively to actions Penzer took in New Jersey in connection with a New Jersey transaction, and thus do not arise from Penzer's membership in the New York bar. See, e.g., Lipin v. Hunt, 538 F. Supp. 2d 590, 598 (S.D.N.Y. 2008) ("None of Plaintiff's causes of actions arise from [defendant's] admission to practice in New York. Even assuming that admission to the New York bar can be considered a transaction of business in New York and that acts taken as an attorney might 'arise from' that attorney's admission to practice, all of Plaintiff's allegations relating to actions taken by [defendant] in his capacity as a[n] attorney relate to actions taken in connection with proceedings in Maine courts. Such actions do not arise from [defendant's] admission to the New York bar in any way.");[17]

---

[17] See also, e.g., BHC Interim Funding, LP v. Bracewell & Patterson, LLP, 02 Civ. 4695, 2003 WL 21467544 at *8 (S.D.N.Y. June 25, 2003) ("Nor does the allegation that certain of [defendant law firm's] lawyers are admitted to practice in New York establish, alone or in combination with the client census allegations, purposeful availment. Plaintiff has neither alleged nor offered evidence that [defendant law firm] has made specific efforts to make itself known in the New York legal market, or to establish a client base here."); Worthington v. Small, 46 F. Supp. 2d 1126, 1130 (D. Kan. 1999) ("[P]laintiff's argument that defendant's membership in the Kansas bar . . . constitutes the 'transaction of business' for purposes of long-arm jurisdiction is not persuasive."); Santos v. Sacks, 697 F. Supp. 275, 279-80 (E.D. La. 1988) ("Plaintiffs allege that the [attorney] defendants are subject to personal jurisdiction in Florida under . . . the Florida long-arm statute because they practice law in Florida on a (continued...)

cf., e.g., Ghanem v. Kay, 624 F. Supp. 23, 25 n.6 (D.D.C. 1984); Johnson v. Ward, 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 35 (2005) ("Plaintiffs' cause of action arose out of [New Jersey] defendant's allegedly negligent driving in New Jersey, not from the issuance of a New York driver's license or vehicle registration. . . . The negligent driver could have had a license from any state, or no license—that defendant had a New York license and registration is merely coincidental. As such, plaintiffs cannot rely on CPLR 302(a)(1) to establish long-arm jurisdiction . . . ."); Polansky v. Gelrod, 20 A.D.3d 663, 664, 798 N.Y.S.2d 762, 764 (3d Dep't 2005) ("[E]ven if [defendant's] license were deemed to constitute the transaction of business in the state, there is no allegation or proof of a substantial nexus between his transactions in New York and plaintiff's cause of action.").

Penzer's appearances in New York courts in unrelated matters in 1987, 1991 and 1994 are jurisdictionally irrelevant. Penzer's last New York court appearance was nearly twenty years ago, which falls outside the scope of conduct courts generally consider in a personal jurisdiction analysis. See, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569-70 (2d Cir.) (holding a six-year limit on the conduct to be considered in jurisdictional analyses was reasonable, citing cases imposing limits ranging from three to seven years), cert. denied, 519 U.S.

---

17/ (...continued)
continuing basis . . . . Plaintiffs in the instant case have failed to satisfy the requirements of [Florida's long-arm statute] because their malpractice action against the [attorney] defendants is based on acts or omissions which occurred in Louisiana."); Crea v. Busby, 48 Cal. App. 4th 509, 516, 55 Cal. Rptr. 2d 513, 516 (1996) ("[R]espondent's activities within California are also insufficient for the state to exercise limited jurisdiction over him. First, appellant's cause of action does not arise out of an act or transaction completed within California; respondent's legal representation concerning the breach of the licensing agreement took place entirely in Oregon. Secondly, respondent has not purposely availed himself of the privileges of conducting activities in California, thereby invoking the benefits and protection of its laws. There is no evidence of any purposeful activity on respondent's part from which it can be inferred that he intended to conduct business in California, nor does the maintenance of his California law license confer any benefit from or protection of California law upon his legal practice in Oregon." (emphasis added)).

1006, 1007, 117 S. Ct. 508, 508 (1996).[18/] Moreover, as with Penzer's New York bar membership, the instant action is based entirely on conduct alleged to have taken place in New Jersey in connection with a New Jersey transaction, and does not arise from Penzer's decades-old practice in New York courts. (See cases cited at pages 15-16 & n.17 above.) In any event, courts decline to base personal jurisdiction on unrelated or insignificant court appearances. See, e.g., Mayes v. Leipziger, 674 F.2d 178, 185 (2d Cir. 1982) (finding no basis for jurisdiction over California attorneys who appeared in California action on behalf of New York client); Pisani v. Diener, No. 07-CV-5118, 2009 WL 749893 at *6 (E.D.N.Y. Mar. 17, 2009) (where claim was based on "attorney's conduct in connection with representing plaintiff in" foreign state and "plaintiff offers no argument or allegations that suggest that any of the alleged conduct . . . took place in New York," court held "there is no prima facie showing of personal jurisdiction"); Worthington v. Small, 46 F. Supp. 2d at 1131.

**b. The New York Meeting and the Potential Bay Shore Transaction**

The only conduct that occurred in New York was Penzer's attendance at a single meeting at Bernath's New York office, "the main purpose" of which was to meet with others regarding a potential transaction in Bay Shore, New York, during which Penzer also allegedly spoke with Bernath about the subject transaction. (Dkt. No. 14: Bernath Opp. Br. at 10-11; see page 4 above.) This meeting is relevant, Bernath suggests, because it shows that Penzer was conducting

---

[18/] See also, e.g., Worthington v. Small, 46 F. Supp. 2d at 1134 ("Specifically, plaintiff alleges that defendant, as an attorney licensed to practice law in Kansas, has represented clients in seven cases filed in the United States District Court for the District of Kansas since 1990. Significantly, however, only two of those cases were filed after 1992. Plaintiff also alleges that defendant has appeared as a defendant in eight cases in Kansas state court. All of those cases were filed in 1990 or 1991. In short, other than maintaining his Kansas law license, defendant has had very few contacts with Kansas in recent years.").

other business in New York, i.e., negotiating the potential purchase of property in Bay Shore, and because Penzer's alleged discussion with Bernath regarding the subject transaction provides a nexus between New York and the present claims.

For a single meeting in New York to justify the exercise of personal jurisdiction pursuant to C.P.L.R. § 302(a)(1), the meeting must have played "'a significant role in establishing or substantially furthering the relationship of the parties.'" Three Five Compounds, Inc. v. Scram Techs., Inc., 11 Civ. 1616, 2011 WL 5838697 at *4 (S.D.N.Y. Nov. 21, 2011).[19] Meetings which are merely "exploratory, unproductive, or insubstantial are insufficient to establish" personal jurisdiction. United Computer Capital Corp. v. Secure Prods., L.P., 218 F. Supp. 2d at 278.[20]

As to Bernath's assertion that Penzer discussed the New Jersey real estate transaction with Bernath while Penzer was present in New York, Bernath provides no detail as to the content of the alleged discussion, and Penzer asserts that there was no discussion at all, merely a "'hello'" in passing. (See page 4 above.) Bernath's allegations are inadequate to establish that this sole discussion in New York was sufficiently significant to establish a basis for personal jurisdiction. E.g., Three Five Compounds, Inc. v. Scram Techs., Inc., 2011 WL 5838697 at *4; United Computer Capital Corp. v. Secure Prods., L.P., 218 F. Supp. 2d at 279 ("These meetings relate only indirectly

---

[19] Accord, e.g., Druck Corp. v. Macro Fund (U.S.) Ltd., 102 F. App'x 192, 194 (2d Cir. 2004); United Computer Capital Corp. v. Secure Prods., L.P., 218 F. Supp. 2d 273, 278 (N.D.N.Y. 2002).

[20] See also, e.g., Buccellati Holding Italia SPA v. Laura Buccellati, LLC, 11 Civ. 7268, --- F. Supp. 2d ----, 2013 WL 1248416 at *7 (S.D.N.Y. Mar. 27, 2013) ("Meetings and communications that never result in a business relationship or transaction do not provide a basis for the exercise of personal jurisdiction." (collecting cases)); Presidential Realty Corp. v. Michael Square W., Ltd., 44 N.Y.2d 672, 673, 405 N.Y.S.2d 37, 38 (1978) ("[P]hysical presence alone cannot talismanically transform any and all business dealings into business transactions under CPLR 302.").

to plaintiff's claims against defendants, representing mere link[s] in the chain of events leading to the claim[s] for which relief is sought, and they are insufficient to justify the assertion of personal jurisdiction over the defendants." (citation omitted)); McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 (1981); Presidential Realty Corp. v. Michael Square W., Ltd., 44 N.Y.2d at 673-74, 405 N.Y.S.2d at 38 ("Jurisdiction, if any, under New York's long-arm statute would appear in this instance to turn on the extent of defendants' activities in New York State at the alleged conference . . . . No reliance can be placed on any attendant negotiations on that day since no proof is tendered . . . of the fact or the extent of any negotiations. Therefore on the record before us there is no proof of any contacts with this State other than the fact that the modification letter and the agreement were signed in New York. This is not sufficient to confer jurisdiction.").[21/]

Indeed, while no date is provided, it appears the meeting took place after the September 2010 wire transfers were complete, since they allegedly were discussed (see page 4 above); thus, the relationship between Penzer and Bernath that is at issue in this action already existed, and was not established or substantially furthered by this meeting. See, e.g., MEE Direct, LLC v. Tran Source Logistics, Inc., 12 Civ. 6916, 2012 WL 6700067 at *5 (S.D.N.Y. Dec. 26, 2012)

---

[21/] See, e.g., Sher v. Johnson, 911 F.2d 1357, 1363 (9th Cir. 1990) ("It may be said, of course, that by coming to California in connection with the representation, the partnership conducted its business in that state. We do not believe, however, that in the context of the 'parties' actual course of dealing,' the partnership was availing itself of any significant California privilege by coming into the state to talk to its client. The three trips to California . . . appear to have been little more than a convenience to the client, who would otherwise have had to travel to Florida. We find these contacts too attenuated to create a 'substantial connection' with California." (citation omitted)); see also, e.g., La Piel, Inc. v. Richina Leather Indus. Co., No. 10-CV-1050, 2013 WL 1315125 at *13 (E.D.N.Y. Mar. 29, 2013); Winston & Strawn v. Dong Won Secs. Co., 02 Civ. 0183, 2002 WL 31444625 at *4 n.3 (S.D.N.Y. Nov. 1, 2002) ("The fraction of the time spent by [the attorney] in New York is insufficient to result in a finding that performance of work associated with the California litigation occurred in the state."); Nader v. Getschaw, 99 Civ. 11556, 2000 WL 1471553 at *5 (S.D.N.Y. Sept. 29, 2000).

(Plaintiff "alleges that [defendant] attended a freight review meeting, as well as two negotiations related to the allegedly converted funds, in its Manhattan offices. . . . [Plaintiff] does not allege that the meetings, which were conducted subsequent to the formation of the Agreement, were necessary to or substantially advanced its business relationship with [defendant]. Therefore, the meetings do not support the exercise of personal jurisdiction." (emphasis added)); Dogan v. Harbert Constr. Corp., 507 F. Supp. 254, 262 (S.D.N.Y. 1980) ("The plaintiff also asserts that the August 29th meeting between the parties at [plaintiff's] attorney's office in New York constitutes a transaction of business here since the discussions were essential to the continuance of the contract between the parties. I disagree. [Plaintiff] declares that 'at the meeting we discussed the ongoing relationship between the parties and the obligations I felt [defendant] owed to me and SA/DO.' Such a meeting to discuss differences under an existing contract has no jurisdictional significance in New York." (citation omitted)); Greco v. Ulmer & Berne L.L.P., 23 Misc. 3d 875, 889, 879 N.Y.S.2d 885, 897 (Sup. Ct. Kings Co. 2009) ("[E]ven if the alleged meetings did take place, there is no support for the claim that they were 'essential to the formation or continuance' of the relationship between [defendants] and plaintiffs, since they took place long after the Firm began its representation of the Trust and its trustee." (emphasis added)).

Bernath admits that the potential transaction in Bay Shore, New York was completely unrelated to the New Jersey transaction that is the subject of this action—it did not even involve Bernath—and thus it cannot be said that Bernath's claims arise from or are based on that transaction. See, e.g., Ferrante Equip. Co. v. Lasker-Goldman Corp., 26 N.Y.2d 280, 284, 309 N.Y.S.2d 913, 917 (1970); Greco v. Ulmer & Berne L.L.P., 23 Misc. 3d at 888, 879 N.Y.S.2d at 896-97 ("[T]he court concludes that the [law firm] defendants are not subject to the jurisdiction of the courts of New York. . . . In the first instance, [the former trustee] is not a plaintiff in the instant action, so that any

meetings that he may have had with the [law firm] defendants are irrelevant to a determination of whether movants are subject to jurisdiction here. . . . Also significant is the court's finding that [the former trustee's] claim that he met with [defendant attorneys] in New York is patently incredible in view of the fact that he fails to provide any details with regard to the alleged meetings . . . .").

**c. Prior Representation in Two Previous Transactions**

The evidence Bernath submits to prove that Penzer was Bernath's attorney in two prior transactions shows, if anything, that Penzer represented two New Jersey limited liability companies (RBRB) in these transactions. (See pages 2-3 above.) The transactions for which Penzer provided the alleged representations occurred in New Jersey, and involved the purchase of New Jersey property from New Jersey sellers on behalf of the New Jersey RBRB entities. (See pages 2-3 above.) Accordingly, the evidence of these prior transactions offers no support for Bernath's position.[22]

---

[22] See, e.g., Becker Mall Props. v. Centura Bank, 93 Civ. 3730, 1993 WL 364456 at *1-2 (S.D.N.Y. Sept. 10, 1993) ("Plaintiff's arguments in favor of jurisdiction under [C.P.L.R. § 302(a)(1)] are misplaced; while a single transaction of business may create personal jurisdiction in certain circumstances, the present transaction does not present such circumstances. The Lease in question originally executed in North Carolina by two North Carolina entities pertains to property in North Carolina. That the North Carolina partnership leasing the property was acquired eight year[s] later by a New Jersey partnership whose managing agent is in New York does not give rise to a transaction of business. By virtue of the fortuity of plaintiff's agent's location in New York, defendant has had to correspond by telephone and mail with New York for matters relevant to the Lease and to the present dispute. Such contacts are infinitesimal and do not indicate purposeful availment of the privilege of conducting activities within the state of New York thus invoking the benefits and protection of its laws." (fn. & quotations omitted)); Greco v. Ulmer & Berne L.L.P., 23 Misc. 3d 875, 878, 885, 879 N.Y.S.2d 885, 889, 894 (Sup. Ct. Kings Co. 2009) (declining to exercise personal jurisdiction over law firm in malpractice action where "the Firm never entered into a written retainer agreement with plaintiffs" and "when the Firm agreed to represent the trustee and the Trust, the trustee was a Delaware entity").

Moreover, assuming arguendo that Bernath (rather than RBRB) was Penzer's client in these prior transactions (and even the subject transaction), New York courts decline to base the exercise of personal jurisdiction on the mere fact that an attorney's client was a New York resident where, as here, New York law was not implicated and the representation had no connection to New York. See, e.g., Mayes v. Leipziger, 674 F.2d 178, 185 (2d Cir. 1982) ("We do not believe that in these circumstances the New York courts would exercise jurisdiction solely on the basis that the defendants, from California, reported to their New York client and sought the wherewithal (i.e., funds, authority, and information) by means of letters and calls to New York to perform their non-New York services."); Epstein v. Thompson, 09 Civ. 8696, 2010 WL 3199838 at *3 (S.D.N.Y. Aug. 12, 2010) ("The fact that an attorney's client resides in New York does not mean that the attorney transacts business in New York. Nor do contacts between out-of-state attorneys and New York clients confer jurisdiction over the attorneys, where, as here, the attorneys perform all legal work outside New York." (citation omitted)); Forgash v. Paley, 659 F. Supp. 728, 730-31 (S.D.N.Y. 1987) ("While [plaintiff] and [defendant] may have worked together previously to obtain financing for real estate in New York, defendants have not transacted business in New York with respect to the financing for the New Jersey property. . . . Moreover, a defendant, absent other factors, will not be subject to suit in New York simply because a New York resident solicited his services, or that the defendant placed telephone calls to and corresponded with a New York business in connection with the purchase and sale of out-of-state property." (fn. omitted)); Bill-Jay Mach. Tool Corp. v. Koster Indus., Inc., 29 A.D.3d 504, 505, 816 N.Y.S.2d 115, 117 (2d Dep't 2006) ("Although [plaintiff] did establish that [defendant] knew it was contracting with, and performing services for,

a New York resident, such minimal contacts without more are insufficient to confer personal jurisdiction under New York's long-arm statute.").[23/]

**2. C.P.L.R. § 302(a)(2): Tortious Act Committed in New York**

Personal jurisdiction over Penzer is not appropriate under the second prong of New York's long-arm statute, C.P.L.R. § 302(a)(2). Bernath's claims arise out of a New Jersey attorney's conduct in connection with the disbursement of funds that Bernath transferred to a New Jersey bank account for a real estate transaction involving the purchase of New Jersey property from a New Jersey seller. (See pages 3-4 above.) Bernath does not allege that Penzer committed tortious acts within New York State. (Dkt. No. 1: Compl. ¶¶ 28, 31, 34-35, 38-39.) Bernath therefore has not made a prima facie showing that personal jurisdiction over Penzer is appropriate under C.P.L.R. § 302(a)(2). See, e.g., Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 789-90 (2d Cir. 1999) ("At minimum, to qualify for jurisdiction under [C.P.L.R. § 302(a)(2)], 'a defendant's act or omission [must have] occur[red] within the state.' . . . [A] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)."); Bensusan Rest. Corp. v. King, 126 F.3d 25, 28-29 (2d Cir. 1997); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 21, cert. denied, 382 U.S. 905, 86 S. Ct. 241 (1965);

---

23/ See also, e.g., Stair v. Calhoun, No. 07-CV-03906, 2009 WL 792189 at *7 (E.D.N.Y. Mar. 23, 2009); BHC Interim Funding, LP v. Bracewell & Patterson, LLP, 02 Civ. 4695, 2003 WL 21467544 at *8 (S.D.N.Y. June 25, 2003) ("That [defendant] has clients that are based in New York is not indicative of such purposeful availment—Plaintiff does not allege that [defendant] secured those clients by advertising in New York, or that it established any sort of presence here in connection with those relationships."); Harris v. Mar. Asbestosis Legal Clinic, 89 Civ. 7579, 1991 WL 2853 at *3 (S.D.N.Y. Jan. 10, 1991); Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A., 85 A.D.2d 861, 861, 446 N.Y.S.2d 447, 449 (3d Dep't 1981) ("The fact that defendant knew it was dealing with a New York resident, or that its employees traveled to New York on two separate occasions to attend depositions is not sufficient in and of itself to establish personal jurisdiction under CPLR 302.").

Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) ("[T]he bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of section 302(a)(2).").

**3. C.P.L.R. § 302(a)(3): Tortious Act Causing Injury in New York**

Personal jurisdiction over Penzer is not appropriate under the third prong of New York's long-arm statute, C.P.L.R. § 302(a)(3). "'[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate "the original event which caused the injury."'" Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999)); DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). "'[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d at 209 (quoting Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) (where plaintiff lived in New York and sued his New Jersey employer for wrongful discharge, situs of injury was location of events which caused injury, i.e., New Jersey, not place where economic consequences were felt, i.e., New York), cert. denied, 498 U.S. 1028, 111 S. Ct. 681 (1991)); see also, e.g., Hermann v. Sharon Hosp., Inc., 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (2d Dep't 1987) ("The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff."). As the Second Circuit has stated, "'[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d at

209.[24] "Under the situs-of-injury test," where "the 'original event' that caused the economic harm to [Bernath] was [] the disbursement of the funds," the situs of Bernath's injury is the place where the funds were disbursed, here New Jersey. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 792.

Bernath's claims arise out of a New Jersey attorney's alleged misconduct in the disbursement of Bernath's funds, intended for the purchase of property in New Jersey, from a New Jersey bank account to a New Jersey resident. (See pages 3-4 above.) While Bernath alleges that Penzer committed tortious acts in New Jersey, the complaint does not contain any allegations that those alleged tortious acts had any effect in New York State sufficient to establish a basis for jurisdiction under C.P.L.R. § 302(a)(3).[25] Nor has Bernath submitted any evidence that Penzer expected his actions in New Jersey to have consequences in New York, see, e.g., Bensusan Rest. Corp. v. King, 126 F.3d 25, 29 (2d Cir. 1997) (New York "restricted the exercise of jurisdiction under sub-paragraph [302] (a)(3) to persons who expect or should reasonably expect the tortious act to have consequences in [New York] state"),[26] or that Penzer "regularly does or solicits business,

---

[24] See also, e.g., Twine v. Levy, 746 F. Supp. 1202, 1206 (E.D.N.Y. 1990) (McLaughlin, D.J.) ("That the plaintiff is domiciled in New York does not mean that New York is the situs of the injury.").

[25] See, e.g., Nader v. Getschaw, 99 Civ. 11556, 2000 WL 1471553 at *5 (S.D.N.Y. Sept. 29, 2000); Twine v. Levy, 746 F. Supp. at 1206-07; Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A., 85 A.D.2d 861, 862, 446 N.Y.S.2d 447, 449 (3d Dep't 1981) ("[T]he situs of a nonphysical, commercial injury is where 'the critical events associated with the dispute took place.' Since any alleged acts of legal malpractice took place in Florida, and were related to a security interest in Florida property, it cannot be said that injury was sustained in New York." (citations omitted)).

[26] See also, e.g., Bill-Jay Mach. Tool Corp. v. Koster Indus., Inc., 29 A.D.3d 504, 506, 816 N.Y.S.2d 115, 117-18 (2d Dep't 2006) ("Assuming, without deciding, that [defendant] committed a 'tortious act' in California, [plaintiff] failed to establish, on this record, that (continued...)

or engages in any other persistent course of conduct" or "derives substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3).[27/]

Bernath has not made a prima facie showing that personal jurisdiction over Penzer is appropriate under the third prong of New York's long-arm statute, C.P.L.R. § 302(a)(3).[28/]

---

[26/] (...continued)
[defendant] expected or should reasonably have expected such tortious act to have consequences in New York, as it is well settled that 'the indirect financial loss resulting from the fact that the injured person resides or is domiciled [in New York],' without more, is insufficient to confer jurisdiction under CPLR 302(a)(3)(ii).").

[27/] See, e.g., Reiss v. Steigrod, 866 F. Supp. 747, 750 (S.D.N.Y. 1994) (Sotomayor, D.J.); Smith v. Morris & Manning, 647 F. Supp. 101, 104 (S.D.N.Y. 1986) ("The complaint does not sufficiently allege, and the Court is convinced that the underlying facts do not establish, that [defendant] 'regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from services rendered, in the state or . . . from interstate or international commerce.' [Plaintiff] contends that [defendant's] corresponding with him in New York by telephone and letters is sufficient to constitute 'persistent conduct' in the state and that the fees he paid to the firm from New York are substantial revenues, derived from services rendered in the state or from interstate commerce. The Court disagrees. . . . [N]o personal jurisdiction exists over [defendant] by virtue of C.P.L.R. § 302(a)(3).").

[28/] Personal jurisdiction over Penzer is not appropriate under the fourth prong of New York's long-arm statute, C.P.L.R. § 302(a)(4). Bernath does not allege that Penzer owns, uses, or possesses any real property situated within New York State. Penzer's affidavits confirm that neither Penzer's law firm as an entity, nor Penzer as an individual, own any property or assets in New York. (See page 5 above.) And even if Penzer were held to own property in New York, Bernath's claims do not "arise from" any such property.

Because Bernath has not made a prima facie showing that jurisdiction over Penzer is appropriate under any prong of New York's jurisdictional statutes, C.P.L.R. §§ 301, 302(a), the Court need not address the question of whether personal jurisdiction "'comports with the requisites of due process.'" E.g., Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208-09 (2d Cir. 2001). Likewise, because dismissal is warranted on jurisdictional grounds, the Court need not address Penzer's alternative arguments for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

**CONCLUSION**

For the reasons set forth above, Penzer's motion to dismiss (Dkt. No. 8) is GRANTED and the case is dismissed without prejudice.

SO ORDERED.

Dated: New York, New York
June 18, 2013

**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to: All Counsel